Welcome to the Fourth Circuit. We're ready to hear argument in our first case, Edwards v. Cardinal Transport. Mr. Fitzgerald, whenever you're ready. Right ahead. May it please the Court, Matt Fitzgerald on behalf of Cardinal Transport. The question in this case is whether Cardinal, a motor carrier, is liable for injuries caused by Danny McGowan, an owner-operator who leased his trucks to Cardinal. The incident happened in McGowan's private truck yard where he was maneuvering a forklift near a parked trailer, attempting to load a one-ton metal rod onto the trailer. The rod ultimately slipped and fell, crushing the plaintiff, Mr. Edwards' foot. At trial, the question came down to whether McGowan was an employee of Cardinal, and the trial court wrongly instructed the jury that it could presume that McGowan was Cardinal's employee. In the district court's mind, this presumption came from a regulation, 49 CFR 376.12C1. And Section C1 says, essentially, that a motor carrier controls the equipment for the duration of a lease and bears complete responsibility for its operation. One of the arguments that opposing counsel makes is that even if you are correct on the law with regard to these two paragraphs in that subsection C, that you should have asked for a special verdict form as opposed to a general verdict form. So what's your answer to that? A couple of answers, Your Honor. So first, I note that the judge pointed out that he wouldn't have accepted a special verdict form even if anyone had asked for it, and so any such request would have been futile. I believe that's at page 520 of the Joint Appendix. But secondly, it really isn't the error. The error is not what's in the jury form. The error is the instructions. In other words, the error is not whether it's a detailed or a general jury form. The error is the instructions given to the jury. The problem is, right, that the jury was also instructed on the state law requirements for showing an employment relationship, and you don't contest that there was sufficient evidence to show it under state law, right? Well, we do, Your Honor, on the scope of employment point, which is the separate argument. Right, but not the relationship. There was enough evidence under state law to show an employment relationship. We think the only way that that... You haven't argued otherwise. We haven't argued otherwise, but I will say that the prejudice from the presumption in the jury instruction, we believe, affected whichever way that the jury went here. Because after all, the jury is told there is a presumption, or the jury is told there is a regulation, C-1, that says the motor carrier controls, and then it goes on and provides the rebuttable presumption. But on the very next page, even where the jury may have been looking at the common law path, it talks about the element of control. And so the jury shouldn't have been told that regardless of the path that they went, prejudice is satisfied. I would have thought, and I think the judge in this case instructed the jury that if they found, if they did not find the rebuttable presumption, then they could proceed to the common law definition of the relationship. Is that right? Well, it said two paths. I'm not sure. I don't think it said you have to consider the rebuttable presumption first, but it was ordered first on pages 93 and 94 of the joint appendix. The question here is that a special verdict might have eliminated this appeal altogether if the jury had found one, both, or the second common law. I don't think so, Your Honor, because the way that I read the jury instructions, being told that there is a regulation, C-1, that says the motor carrier controls, itself sort of poisons those instructions, even under the common law path. Isn't it relevant under the common law path? I don't understand why, I mean, under common law, you look at all of the agreements between the two parties, and one of them is the agreement that's required by the regulation, and in the lease, I don't understand how that poisons anything. Well, it does, Your Honor, because section C-4 of the regulation says, quote, nothing in C-1 is intended to affect the employment status, and so So you're saying forget the presumption. This somehow preempts state law, to the extent that state law would say, we look at all of the agreements between these two parties. You're saying that C-4 preempts state law, and you can't look at the lease agreement. Not that you can't look at the lease agreement in general, but the single provision of the lease agreement that comes from section C-1 You can't look at that. I think, no, Your Honor, it should have been excluded. Is there any case law saying that C-4 preempts state law to the extent state law would look at the lease agreement in full? Well, I don't think it's quite a question of preemption, Your Honor, because after all, if you only looked at the lease agreement, which I think is on page 110 of the joint appendix, the relevant part of it, it has right in the agreement a tip of the cap to C-4 as well, and it says, this section is not intended to show employment status, and so even if you were just looking at the agreement itself, you would say, well, they've agreed that this particular provision isn't for employment status. So, C-4, the inter- All right, let me ask you this. So let's say you prevail on the regulatory argument that it was error to have this combination instruction, and so it goes back, and so now the plaintiff has to proceed solely under West Virginia common law. Is the regulation, and I presume compliance with the regulation, is that, in your view, admissible in the common law case? I think it's not, Your Honor, and the reason why it's not is section C-4 says that the provisions required by C-1 are not intended to affect the status at all, and so using them is allowing them to have that effect. Are there any cases saying that? I've seen some cases addressing this argument and coming out the other way. Are there any cases coming out this way? Your Honor, I think the cases, Hernandez and Universal AMCAN, that discuss this, I think that those cases set aside evidence of compliance with that particular regulation when they're common law tests for employment and control. So we have here also the Interstate Commerce Commission, which has been very clear and very broad, and it has said, even before it added section C-4 to the regulations, that we repeat that our rules are not intended to influence in any fashion a court's liability determination. The Interstate Commerce Commission believed that state tort law was adequate to this purpose, and that — Well, but that seems to run counter to the congressional objective in passing the statute to begin with, right? That Congress determined that, in fact, carriers are — carriers, in fact, were evading responsibility under state tort law. No, Your Honor. I think what Congress recognized is that the concern was motor carriers evading compliance with the federal safety regulations themselves. Why did Congress write the statute so that it says, under A-4, the lease provision can require that you have control of and be responsible for operating the motor vehicles in compliance with requirements prescribed by the Secretary, so the regulations, and with other applicable law? Why didn't it just stop after requirements prescribed by the Secretary? Your Honor, I don't know for sure, but I have hunted for other applicable law and places that say that is a reference to state tort law, and I haven't found any. I think perhaps that refers — But you think it's superfluous, that that language should not be in the statute, because the only thing Congress was concerned about was requirement — compliance with regulatory requirements. With regulatory requirements in general, yes, Your Honor. So your reading of the statute renders, and with other applicable law, superfluous. No, I don't think so. It could refer, for instance, to state regulatory law that exists. I'm just not sure that other applicable law is the right way that Congress would have used to tap into this entire regime of state tort law. Right, but I'm not sure that if what Congress meant was, we care about holding these carriers liable vicariously for violations of requirements prescribed by the Secretary on safety of operations and equipment, if that's what they cared about, I don't understand why anything would follow that phrase. So I think your understanding that this is all about vicarious liability under federal regulatory requirements is inconsistent with the statute. Well, Your Honor, again, even if that view were correct, that's the authorizing statute, and so it authorizes the Secretary to make these regulations. And so then we turn to the regulations, and there is where we find C-1 and C-4. I mean, C-4 specifically saying that C-1 is not intended to even affect employment status. So perhaps even if the Secretary were allowed to go more broadly and say, make a regulation, which could easily have been made that would simply say, the motor carriers are liable, but there is no such regulation. On your reading then, what work does C-1 do? So what C-1 does is, it ensures regulatory control. So in other words, and I think it's good to look back to the problem that they were trying to solve when they created C-1, which was long before C-4. The issue was that there were trucks on the road, and it was difficult to connect those trucks to the motor carriers that they were affiliated with. Leases would be negotiated sometimes for only one trip, or even for part of a trip. It would be negotiated retroactively. And so there were these shifting sands. When they would find a truck on the road in violation of a new safety regulation, it wouldn't be easy to hook that to the motor carrier. And what C-1 is saying is, the motor carriers are accountable for compliance with the federal safety regulations. And when a truck or trucker on the road is found in violation, we go to the motor carrier. And C-1 is part of a set of regulations that all sort of went that way. Some of those, some other regulations that are in there as well say, the leases have to last a certain amount of time. They can't just be these one-trip type leases. And so it all kind of points in that direction. We have also further statements from the Interstate Commerce Commission, making even clearer that it meant for C-1 to be neutral. In 1992, when they created Section C-4, the ICC called it, quote, a clear statement of the neutrality of Section C-1. And I'm sorry, and then I will stop, but I really am struggling with the regulation and the statute, and I'm hoping you can help. So if C-1 says nothing about the relationship between the carrier and the owner-operator, how does it provide for vicarious liability even under federal regulations? I'm not sure I'd call it vicarious liability, Your Honor, but it provides that when the regulators find a truck in violation or a trucker in violation of these thick set of trucks on the road, that the motor carrier that's affiliated with that is responsible. So they're subject to- That affects the relationship. I don't- that totally affects the relationship. Otherwise they wouldn't be. It- I just- I guess I still don't understand how you can- Well, maybe, Your Honor, but- How one can do anything if what C-4 means is it doesn't affect in any way- you were just reading me the language- it's totally neutral as to the relationship between these two parties. And I think the answer, Your Honor, is it's totally neutral as to the employee versus independent contractor distinction. So for instance, if a truck on the road is found, say, overweight, and the regulators go to the motor carrier, it won't matter whether the driver is an independent contractor or an employee. But under the facts of these case- of this case, the way that this liability is flowing, it does matter. And so that's why C-4 is so operative here, but C-1 still has a role to play. Prejudice in this case is also clear under Harwood. As in Harwood, there are two paths that the jury could have taken to find liability. We cannot be certain which path that they took. And in fact, here, even more so than in Harwood, the two paths are parallel and similar to construction, essentially poisoned them both. But in any event, Harwood makes clear that a new trial is warranted on that point. Nor is there any basis for limiting Section C-4 to workers' compensation claims. There is no textual hook for doing that. And really, in the workers' compensation context, it's exactly the same question as posed in state tort. Is the person, the driver often, an employee or an independent contractor? And it doesn't make sense to decide that exact same question differently based on who is asking the court. If there are no further questions, I'll save the rest of my time and stand on my briefs as to the other arguments. Okay. Thank you. Thank you, Mr. Fitzgerald. Mr. Magistro. Thank you, Your Honors. May it please the Court. My name is Anthony Magistro. I'm here with Richard Weston. I'm here on behalf of the plaintiff appellee in this case. I'd like to start, unless the Court has any questions, I'd like to start with the issue of would we have needed to be here had there been a better jury verdict form. Let's start with the idea, first of all, that the instruction itself, the language of the defendant adequately preserved the error on the regulation. The text of the instruction was agreed to. So the instruction of the court read, they said, given what you've ruled, we agree this is how the jury should be instructed. Then neither party tendered to the court a verdict form that separated out the statutory liability from the West Virginia common law liability. Counsel for the defendant has made a reference to language in the record that says that the court said he wouldn't give the instruction. What the court said was nobody tended it, nor would I be inclined to use a special interrogatory form that would require the jury to go through each of those steps and answer. Now there's no indication from the court, first of all, you don't know what the court would have done had you not asked. And had you asked and it had been turned down, then you have appeal of error. But there's no indication that the court wouldn't have been inclined to say we're going to separate these two claims. Had that separation occurred, or would I be inclined to use a special interrogatory, require the jury to go through each of these steps? But I think by each of those steps, that is, the instruction, if you look at the instruction that was given, it was more than are they liable because of the statute? Are they liable because of the common law? There were requirements of finding different factors under those things. And my... There's a threshold issue that says in the jury instructions about the relationship between the two parties. He can do so in one of two ways. First, and he describes a regulatory provision, second, the common law provision. So you clearly have two different steps that you could go through. And within each of those steps, there are several findings the jury had to make to make them applicable. And the way I read the court's comment, which was made in the context of a request nobody made, as being I'm not going to go through a long jury forum with all of those different steps. So what's the argument you're making? I mean, clearly the appellant preserved the regulatory objections. And so... Let me finish. Sure. I'm sorry. Are you suggesting that they had to go, they had to in fact make that request in light of the preserved objection? I'm suggesting that in the absence of requesting the separate special jury verdict form, when there's a general verdict form and there's sufficient evidence to allow one of the claims to be affirmed, which would affirm the judgment, that is sufficient to affirm the entire judgment. What's your best case that says that's error that bars the non-moving party? I think there's two cases I would point out to the court. One is we cited in the brief Jones versus Griffey. In that case, there was a statutory table that was placed into a jury instruction in order to prove comparative negligence. The court said that was error to put the table as an instruction, but that there was sufficient other evidence to allow a jury to conclude that the party was contributory negligent. The second analogous situation and... Is that a general verdict? Yes, it was a general verdict. And given the general verdict, the court even references that it was a general verdict. And the second case, which it's an... Was there an underlying objection in that case? There was an objection to the instruction. Not objection to the instruction. Was there an objection to the ruling of the court on a matter of law as to the foundation for the instruction, which is what happened here? I don't believe so, Your Honor. I think it was, but I'm not sure that is a distinction that matters because the question is, is it error to tell... The situation is analogous. Is it error to tell the jury something? And the court said it was, but there's still plenty of evidence on the alternate claim to allow the jury to go. The Harwood case that the defendant cites, distinguishable, that was talking about two very separate forms of liability. It was not... It was seaworthiness and I'm not an admiralty expert, but there were two very different forms of liability as opposed to, in this case, where we have the same vicarious liability claim that's being decided under state law and just two different paths to get there. The other analogous case law I would... I mean, you have one regulatory path, which, I mean, if I were trying the case, that's the way I would go because that's a pretty simple path to follow. And the second is a state law common law path, which requires more elements of proof, which to my way of looking at it would make it a much more difficult case to prove. Actually if you, as Judge Chambers found, the two paths are complementary. Under West Virginia law, in order to make this showing, the plaintiff first has to make a prima facie showing of the elements of control. At that point, the burden then shifts to the defendants to refute that. So in this case, there is no question, the court denied summary judgment, there was no question there was sufficient evidence for the plaintiffs to make that prima facie showing. The burden then would have been on the defendants, I mean, the court could have written the instruction this way. The court has found that the plaintiffs have made a prima facie showing that Edwards was an employee. The burden is on the defendants to refute that by showing X, Y, Z. ...over the fundamental step in the beginning, which is the plaintiff's burden. So under one path, all they have to show is, well, there was an equipment lease and the leased equipment was in operation. To me, that looks like a pretty easy path to go down and may or may not have any relationship to all the common law elements that there was an engagement, there was compensation paid, there was a power in one party over the other, and that that power was a power of control. Those are factors that are very different from just showing, well, there was a lease and the lease was operative at the time. So they may be two ways to get at the same underlying legal principle, but I think you have a difficult time saying that they are factually the same thing. And I'm not suggesting factually they're the same thing. I'm saying under the facts of this case, the evidence is sufficient to allow the court to have concluded that the plaintiff's initial burden is very slight. He only has to make a prima facie showing. All of the evidence undisputed in the record is sufficient to allow the court to conclude that burden has been met. Then the burden shifts to the defendant under the common law test. And so the defendants would have been in the same position they were in under the regulation. Not necessarily. I mean, if the jury didn't believe the evidence with respect to the common law, establishing the common law relationship, then, which is different evidence from the federal regulatory relationship, then that would make a significant difference. Well, I would suggest, Your Honor, that the evidence regarding those factors was not in dispute. That would have been error if the jury hadn't believed that. And especially given that the standard is not that the jury has to find those things. The standard to have the burden shifting is that the plaintiff just has to make a prima facie case that those factors exist. The much lighter standard. Let me ask you. I think there are two circuits that have accepted the transport company's theory of the law. In your view, are they just wrong? My view, well, first of all, I think the parties have agreed that post-92, Judge Chambers recitation of the law is the majority rule. The two circuits that ruled otherwise did so from context. One was in workers' comp and the other was in whether or not somebody is insured. And I would suggest those are why we believe the regulation was changed to deal with those contexts. The Interstate Commerce Commission, in looking at the, in explaining what the problem was, talks about employment agencies, workers' compensation commissions, and courts. But they do so starting with the premise that most of the courts have gotten it right. And the vast majority rule at that time and this time was that that liability was there. And courts, in some places, decide workers' comp cases. The C-4 regulation. I think the purpose of the C-4 regulation is to resolve the issue of employee status in the relationship between the employer and the employee, not a third party. And some of the case law makes that clear. Even the case law that's referenced by the defendant. For example, the Hernandez Court cites the Pennsylvania case, the Hernandez Court relied on by the defendant, cites a Pennsylvania case, Universal AMCAM versus Workers' Compensation Appeal Board. And in that case, what the court said, that's the wrong one. I'm missing the case. Well, the cases, as we cited in the brief, the cases differ when you're talking about the relationship between third parties and the relationship between the driver and the trucking company. In that point, it's appropriate to say, we're going to maybe give you, when you're deciding the financial relationships, which don't have anything to do with safety. Who pays workers' comp doesn't have anything to do with safety. Whether you're an employee for purposes of an insurance policy doesn't have anything to do with safety. But the C-1 situation, which we believe, as Judge Chambers found, it gets read out, the safety purposes. If you say, C-4 says, that it doesn't have any impact, then those are important when you deal both with the regulatory aspects, as the defendants say, and with respect to responsibilities to third parties who may be injured. Just take a step back here and look at the language of these regulations. So if I were a legislator or a regulator, it might well make sense to create this rebuttable presumption in order to sort of devise a compromise between regulatory oversight and respect for state common law with respect to employer-employee liability, vicarious liability, et cetera. And so, as I understand it, C-1, the original regulatory provision, led courts to conclude one of two things. Either there was an irrebuttable presumption, or there was strict liability. So you get C-4 into the mix, and it seems to me that if, in fact, the regulators intended to create this rebuttable presumption, they went about it in a very strange way. And you're asking us to sort of divine from this rather opaque language and essentially rewrite the regulations to affect this rebuttable presumption. What is the authority for doing that? Well, I think if you read that the authority for doing that is the general doctrine that you shouldn't interpret statutes and regulations in a manner that are inconsistent. And so, C-4... What is inconsistent with interpreting it in a way that your colleague on the other side suggests, and that is that there's a division between the regulatory book that he pointed to and the vast array of regulations that have nothing to do with tort liability and the other side of that ledger, which is tort liability. Well, first of all, you have May in C-4, which I think was something that was significant to Judge Chambers. And so, you're dealing with a situation where you still can have these employer-employee relationships. You also are dealing with a situation where all of these factors and the question before was, isn't this evidence still relevant? Of course, it's still relevant because all of these factors that show control are relevant under these state law tests, at least in West Virginia, in terms of determining employee-employer status for tort liability. So, in a case where you have to resolve that, you have to decide, are we... And then third point I would make is that you've got the statute itself, which governs over the regulations and has a very strong preference requiring the trucking company to comply with other applicable law as if they were the owner. So, when you read all three of those together, you have to decide, how are we going to figure this out? I think the courts could also have concluded, given the legislative history behind the regulation, that the regulation has nothing to do with tort liability. And that would be one reading, that the original readings that said that you're going to be liable are still possible readings afterwards because the regulations... I'm going to cut you off. Sure. I'm a little lost as to what... In answer to Judge Diaz's question, what purpose does C-1 have in your view? C-1 has the purpose of requiring the carrier to assume complete responsibility for the operation of the equipment during the duration of the lease. C-1 requires the carrier to have exclusive possession, control, and use of the equipment during the duration of the lease. So, your opposing counsel in their brief spent a couple of pages, and this is a colloquy that he had with Judge Harris, with his view that C-1 encompasses compliance with safety regulations. But my recollection is that you never addressed that argument in your brief. You had said, I think, somewhere along the line that their reading of C-4 rendered C-1 superfluous. Right. So, they responded and said, no, that's not correct. There is a purpose for C-1, and it's safety regulation. I'm not remembering that you ever responded to that argument. Yeah, I don't think we got to, because my memory is that that argument first appeared in the reply. But the answer to that- I think it's on pages 28 through 30 of their opening brief. Well, then I'm mistaken. But I think the answer to that is that it's superfluous because you have to deal, and as Judge Chambers found, because the other, I think you're reading out the other applicable law. It's not just regulations, and regulations, why do we have regulations? Regulations are for safety, and that's what Judge Chambers found, which we agree with. So if the other applicable law, even if you consider that to be state law, say there was a West Virginia statute that said that instead of being in a regulation, that the driver had to stop every four hours, and that was a state law. It wasn't some sort of regulatory matter. What does that have to do with common law negligence? The question isn't what the regulation is. The question is who's responsible for the failure to- Or the other applicable law. If the statute hypothetically says you have to stop every four hours, that would seem to be other applicable law. But how does common law negligence or common law employment, employee relationship, how is that other applicable law under the terms of the statute? So if that were a case coming up in a tort case, if we had a driver that fell asleep, the other applicable law for it to be relevant in a tort case would have to be something that had a causal relationship with the injury. If you don't interpret other applicable law to be these relationships that lead to vicarious liability in C-1, then all of the case law prior to 92 amendments, I mean, C-1 never changed. C-1 has been consistently interpreted to cause that employment relationship before the 92 regulations. The question is what does C-4 take away from the prior view? Our position is it was designed to deal with workers' comp, insurance, those sorts of employee- employer relationships that are financial, not safety, whether the safety is regulations or whether the safety is compliance with tort law. Anything else you want to tell us? Not unless there are any other questions. All right. Thank you very much, Mr. Fitzgerald. We'll hear from you. Let me make sure I understood correctly from the argument. Do I understand that you do not contest that the evidence is sufficient under the common law relationship to establish that liability? No, Your Honor. We think that the presence of the regulation in the jury instructions made error out of whichever path that the jury went. And we think that properly instructed, the jury would have concluded that the plaintiff failed to carry its burden to show the prima facie case of employment for failure of control. I feel like that might be a slightly different- an answer to a slightly different question. Putting to one side the jury instruction, just on the undisputed facts in this case, the text of the other agreements, put to one side the lease language, if you want. I mean, did you ever say that that is not sufficient evidence to show the employment relationship under state law? I'm sorry, Your Honor. What wouldn't be sufficient there? The other two agreements, one of which incorporates that guidebook or whatever. Oh, so under state tort law, the proper analysis would be who controlled the process of the work? At some point, did you argue the evidence is insufficient to show liability under state law? To show the employment relationship under state law. Is that an argument you have preserved somewhere in this case? No, Your Honor. But the key is, the jury instruction- Let me be clear on this. So there were four elements that were required to be proven to show a common law relationship. And you did not contest that those four elements were shown by the plaintiff? Well, no, Your Honor. The whole trial, we contested the control element. The first three were uncontested, but the trial was about the control element. And so that's what the evidence was brought on to show, that control was absent. But you thought you should win, but it's not that the evidence was so insufficient that had the jury ruled- I mean, you never- So it's fair to say what the judge said, which is the issue of control. At the end of the trial, he said this was hotly contested, and he didn't go either way as a matter of law on that. And so what we're saying is the jury instructions pushed the jury into the wrong conclusion on that, and that if they were instructed without the regulation, they would have concluded that the plaintiff failed to carry its burden to show control in that first instance. Can I ask you a question? What if when I look at the evidence, the undisputed evidence, and I don't have the names in front of me, but those other two agreements, one of which incorporated a third one, it looks to me like it's really hard for me to imagine a reasonable jury finding that the plaintiff hadn't met just the prima facie case for showing an employment relationship. I mean, just based on those agreements, there's a lot of control here. Not which way it would come out, but that the prima facie case had been met. Then what should I do? I still think, Your Honor, that under that case, if you are satisfied that everything was, even if you're satisfied that everything was okay under the common law path, under Harwood... I think there's virtually no chance that however it was instructed, this jury would not have found at least the prima facie case had been made. Then what is the problem? Because either way, the burden gets shifted to Carrier, and Carrier has a chance to rebut the presumption. Let me slightly amend that, because I want to make sure, because it sounded like to me you answered my question and Judge Harris's questions with two different answers. So there are four elements to show this prima facie case of a common law relationship. Did you contest the prima facie case, not the final decision, but the prima facie case for each of those four elements? We did for the control element, yes. We did. That was a significant... I'm sorry, my time is up. That was a significant issue in the trial, and we believe that the plaintiff, without the impact of this being told... So they were told, under the regulation, the motor carrier controls, and then even if they're going the common law path, the next thing on the very next page they encounter is that they're asked, who has the control of the process of the work? And so we think that the presence of that regulation in there sort of poisoned that path and influenced, Your Honor, the prima facie case, which we hotly contested at the trial. So I think your answer is that my premise is wrong. A jury could have found that the prima facie case had not been made here. But again, I guess I would ask you using the Harwood language, and maybe I can infer from that your answer, but the Harwood language is, you know, if there is an objected-to error in the jury instructions and there's a significant risk that it affected the jury verdict, we would reverse. But if I think, look, with or without this error you're complaining of, no jury was going to find you hadn't at least met the prima facie case, then what? Because those other three agreements, there's a lot of evidence of control there. This isn't like a case where what kind of a crazy jury could ever find an employment relationship under state law. It was a hotly contested case for control, but there is evidence also of the absence of control that I think factors in. I mean, the plaintiff has to bear that initial burden, and it's not just a nothing burden. It's a meaningful one. But it's not the same as the ultimate burden. Right. So I think under Harwood, it's clear that even if you think everything would have been okay along one path, if the other path has a legal error, a misstatement of law in it, which is true here, and it cannot be determined which way the jury went, that that is reversible prejudice. I thought Harwood said there had to be a significant risk that the jury had convicted on the wrong ground or wouldn't have convicted on the right ground. But I mean, it doesn't matter. Okay. Anything else? Thank you very much. We'll come down to Greek Council and move on to our next case.
judges: G. Steven Agee, Albert Diaz, Pamela A. Harris